Good morning, your honors. Michael Herrmann, appearing pro bono on behalf of the appellant, Mr. Velasquez. Your honors, this is a matter that arises from a motion for dismissal in the Southern District of California. It is the appellant's request that the matter be returned to the Southern District of California for remand either to hear the pleadings or alternatively for a motion for dismissal with leave to amend the complaint. Mr. Velasquez was a prisoner at the Calipatria State Prison. And he didn't get a hernia operation for 16 months. That's correct. What's the state of mind that you have to demonstrate in order to get past the threshold of here at 12B6? Well, I think that there's a deliberate indifference. And what is the evidence that shows a deliberate indifference? I mean, it seems to me that it was a typical, you know, now you see a doctor, now you don't. And what do you want us to look at to see deliberate indifference? Well, your honors, it's got to be deliberate indifference, not just passage of time or negligence. Well, I understand that. And certainly, I would suspect the defendants in this particular case would want to hide behind that. Well, it is a defense, you know. Of course, they won't hide behind it. They're not hiding, they're asserting it. The Supreme Court said that's what it is, folks. That's a tough part of this case. I mean, I just don't see there's a difference, as you know, between medical malpractice and deliberate indifference. So what's your best fact or set of facts that shows deliberate indifference? Well, I'd like to port the court out to the actions of Dr. Thomas. Dr. Thomas saw Mr. Velasquez on two different occasions. I believe the first occasion was in June of 2006. And at that time, Mr. Velasquez made some complaints as to he was in pain, and he was told by Dr. Thomas, I've given you what you've given, you're not going to have anymore. Medication. Medication, that's right. But quite obviously, the medication was not working since Mr. Velasquez was back into the prison infirmary. So he was receiving some treatment, but he wasn't receiving the curative treatment, which was simply the hernia surgery. Then on the second occasion, Mr. Velasquez again sees Dr. Thomas, and Dr. Thomas says, what's wrong with you? And Mr. Velasquez says, what's wrong with him as far as the hernia and the pain concerning? Did he say, I have a hernia? I believe he did, yes. And in fact, the hernia was, according to the pleadings, was the size of a softball. So that's a pretty large object to be carrying around in front of oneself. So I think it was rather obvious that he had some sort of medical problem and a softball-sized hernia. And the reason I gave you the Jones case was to show that in the past, this court had ruled that a hernia is a severe medical condition. And so on that occasion, Dr. Thomas says, well, that's what you told them. In other words, you told the security guards that you're in pain,  and she was just completely indifferent as to the problems, the pain that Mr. Velasquez was feeling. Is there a difference between completely indifferent and deliberately indifferent? I suspect there are, otherwise we wouldn't have two different words for it. To what extent that difference is, I think maybe there's a culpability in mind. I suppose that one could argue, maybe I'm arguing against myself, that one could be indifferent but negligently indifferent. Well, the courts have said that. Right. The prison problem is they have a constant line of people claiming they hurt and they want medication. Right. And so the doctors are sort of, they've been told, don't just dispense mind-altering drugs because somebody says something hurts. So you're sort of up against that, too. Well, not really, because what he really wanted was he wanted surgery. I think that if he could have, he would have said, don't give me any pain medication whatsoever, cure me of my hernia, and I'll go back to living life the way it should be. It was scheduled within a month, then, the way I see the record. Well, he first complained of the hernia in June of 2005 and saw Dr. Gonzalez, who diagnosed him with having a hernia and made a recommendation for the surgery in the end of July of 2005. The problem is he doesn't get the surgery until October of 2006. But that's not because of deliberate indifference. It seems because doctors were coming and going. That's a, I'm not entirely sure that's the case. And, you know, that's an item that I think that Mr. Velasquez ought to be able to discover and why this matter should be sent back. At least for summary judgment. Well, at least for summary judgment, exactly. And so he could conduct his discovery and find out, is the reason that there was no surgeon available is because the state of California simply didn't have any money and they didn't have any surgeons available. Well, but where is there any evidence that someone is deliberately saying, I'm going to thwart this, perhaps you can tell me that's too strong a standard, but I don't care about his medical condition and I'm going to structure it such that he can't get his surgery. I mean, all you see in this record is he's interacting with the medical personnel and they are addressing his circumstances, perhaps not in the way one would like if you had the option of very high-end medical care. But he's getting attention and they're scheduling him and it takes, albeit a long time, he gets medication. Where is it that someone is saying, I don't care, you're not going to get any help? No specific words, they're not. They're not there. However, the actions and conduct of Dr. Thomas should be alarming to the court because when he comes in and says, I'm in pain, I need to have this fixed, Dr. Thomas says, well, that's what you told them. In other words, you're not in pain. You're just gold-bricking, you're faking it all, it's not actually there. And again, this comes back to the matter of discovery. What happens in, did Dr. Thomas make notes in her notes? Does she have in there, I could care less about this guy, I don't like him, he's a typical complainer here in the prison. I know it's very, very easy to say, well, he's in prison, he's a convicted felon, and so we should think of him as being a less person than he really is. No, I don't think that's the case at all in terms of the way we look at the, it's just difficult, and I know you didn't represent your client below, but deliberate indifference is a high standard. How would you amend the complaint or recommend that he amend his complaint if you were granted leave to amend? Well, I think. Let me add this. You've listed a whole, he listed a whole lot of defendants, everybody who touched the file. Right. And his claims against many of them are thin to none. Very thin. So how would you amend the complaint? Well, I think that one of the ways I would first, I would like to sit down with him. He's at the other end of the state of California from me. I've never actually met him. I've only corresponded through letters. But from what you see on the table and what's before us, I mean, you've got to persuade us there's something there. Well, I would look at Dr. Thomas' conduct. I would like to know a little bit more from Mr. Velasquez as to what exactly was said. Was there something more that was said? Was there something that was said by the guards on the way in and the way out of the medical treatments? I'd like to know if there was ever anything said to him that, hey, we just don't have any money right now, so we can't do this, you'll just have to wait. Well, Dr. Thomas was not a surgeon. He was just an ER guy. And so does that reflect at all on Dr. Thomas' standing as a defendant in this case? Well, I think it does. And I got the impression that Dr. Thomas was a woman, but I could be wrong about that. Having said that, Did Dr. Thomas cancel a surgery or deviate him from the path that Gonzales put him on? Well, not in those words, no. There was never anything in the pleadings that I could see that said Dr. Thomas says, you know what, I'm just going to take you off this track of having surgery. As far as the record is concerned, it looks as if Dr. Gonzales recommended him from surgery. He was already on the surgery track. Correct. And Thomas didn't take him off of that. Thomas did not take him off of that. And I don't know if Dr. Thomas was a surgeon or not. It's very difficult to determine that. I suspect that Dr. Thomas was some sort of general practitioner that dealt with prison minor brumps and bruises, spent medication when necessary. I don't think Dr. Thomas was a surgeon. Was this designated in any reports as a strangulated hernia? I did not see that listed at all, Your Honor. Again, I only dealt with what was left in the record. So getting back to the amendment of complaint, I do think that it's possible that some of the defendants probably are not properly into this matter. Having reviewed this matter, there was one defendant that had provided the surgery. I did write a letter to my client. I understood that he performed that surgery beautifully, so there's no reason to keep that in. So certainly there can be trimming here. I don't know whether or not the warden is culpable or not. I know that appellees have argued that there's no cause of action for respondent superior. That's true. Can I ask you on a different point? You argue that the court below improperly applied a heightened pleading standard. Where do you find that? Well, that's found in the Federal Rules of Civil Procedure in Rule No. 8. No, not the pleading standard, the application by the judge. What are you pointing to to indicate to you that there was an improper pleading standard applied? Your Honor, I believe that I saw that in the final order granting the request for dismissal. But I cannot, as I stand here right now, point to you exactly the page and line in which I read that. But it appeared to me that the court was saying that there could be no possibility that he could recover because he's essentially overpleaded the case. He's made it so clear that there's no way that defendants could possibly have been found culpable for anything that he's alleging. And he did make certain mistakes. The tort claim act, he failed to file in a timely manner. That cause of action is gone. And it's unfortunate because that probably was his best cause of action. Okay, counsel. We'll give you a little bit of time. Hear from the government. Good morning, Your Honors. David Hagelianti, Deputy Attorney General on behalf of the State Appellees. I'd like to first indicate that the evidence that was set out in the amended complaint clearly doesn't show that any of the defendants, whether the supervisory personnel, the doctors, or the 602 Administrative Appeal individuals, acted with deliberate indifference in this case. There was no allegation in the complaint, as the district court properly held or found, in granting the motion to dismiss to establish this culpable state of mind by any of the defendants. To speak specifically about Dr. Thomas, I think it's important to know that Dr. Thomas first saw Mr. Velasquez in or about June of 2006, at the time that he was well on his way to hernia surgery. She provided medication for the pain. I don't believe the record establishes that he indicated to her that he was then suffering from a hernia. There presumably is an indication or an inference from the records that were appended to the complaint and the allegations in the complaint that Dr. Thomas knew that, in fact, he was suffering from a hernia. But the bottom line still remains that she provided medication for his pain, knowing that it would likely calm him and temper the pain. So Dr. Thomas did not act with deliberate indifference. In fact, the next time she saw him was August of 2006. At that time, he was complaining of pain also. She indicated, what's going on? What are you here for? I'm already giving you medication for that. Be comfortable with that. Take it, and good luck. You're already scheduled for surgery, or at least it was in the process, and he was, of course, ultimately operated on in October of 2006. So on this record, given the allegations as to Dr. Thomas, the district court properly concluded that Dr. Thomas did not act with deliberate indifference to his serious medical needs. I was looking for some indication that he was taken off that surgical track, and I couldn't find it. He was not. I think the best argument is that given some of the straight remarks or the remarks at the time that Dr. Thomas was not responsive to pain, knowing that there was a fairly serious hernia involved. That seems to be the strongest argument on deliberate indifference. Go ahead. The allegations against Dr. Thomas are extremely limited. The essence of the contention by Mr. Velasquez against her is simply that he went to see her in June, she prescribed medication, and what happens generally is that inmates like Mr. Velasquez want various things for various ailments, and so they come in and they say, look, if this is what I want, and of course as this court knows, a difference of medical opinion does not establish deliberate indifference. Also, he's not entitled to the type of treatment that he believes he might want or desires. So Dr. Thomas is put in a position as the professional to exercise her judgment. She says, I think you need the medication, I'm going to give it to you, and I believe there's a reference in the record that indeed it's Motrin that she gave to Mr. Velasquez. I think clearly that was within her professional judgment, clearly didn't constitute deliberate indifference, and then of course when you get to August of 2006, he's still suffering from the pain. It's unclear that at that time he speaks to her about the hernia. It's unclear, and I believe he cannot allege that she knew at that time that the hernia was fist size, softball size, or any other size. Shouldn't he have another chance to try to, if he can, in good faith, make that pleading? Isn't that the whole reason why an amended complaint ought to be afforded to him, an opportunity to do that? I don't believe he can do it, and for these reasons. He had the opportunity after the report and recommendation that indicated that the magistrate judge was recommending a dismissal with leave to amend. He responded to that report and recommendation, even though he wasn't entitled to do it, other than through objections, with not only objections, but a motion to leave, or for leave to amend the complaint. He put before the district court everything that he had to support a deliberate indifference argument as to all of these various people. He submitted medical records regarding constipation, other stomach ailments, and so on and so forth. There is no chance that Mr. Velazquez would be able to amend that complaint as to Dr. Thomas. Any exercise would be a futility or a futile exercise. So my thinking is this. The district court acted correctly. The conclusions that none of the defendants acted with deliberate indifference was correct, and the district court went to an exhaustive level to determine that based on all of the facts and all of the information that was stated by Mr. Velazquez, that he was not going to be able to amend the complaint as to any of the defendants, and that any amendment would be a futile exercise. This is not the time where you come in and say, you know, discovery may flesh out additional factors. It is incumbent upon Mr. Velazquez to state a claim upon which relief can be granted. He has not done that, and he cannot do it as to any of these defendants. Well, you really don't think this was elective surgery, do you? And that was categorized, I can't recall by which, some physician. There is a hint in the record that it might have been elective surgery at the time back in July of 2005, and the reason I say that is because Dr. Gonzalez that saw him says basically, I will recommend that you want hernia surgery, because he was diagnosed in June of that year with a protruding hernia, and he had indicated that he wanted surgery as the remedy. So there is a hint that it was what he wanted, but I don't believe it was elective. I believe it was something that needed to be done, except that, as this court knows, based on the record, and in particular the Grannis response at the director's level to a 602 appeal in November of 2006, where she indicates that there are a number of remedies available to treat a hernia, one of which is you just continue to tuck it back in through the opening. It's done successfully for years, because people, generally speaking, are hesitant to go to the third level, which is surgery. The other is a truss that would hold it in. So there are remedies available to him other than surgery, but I don't believe there's an indication on the record that it was elective. I think it was done on the surgery. But none of the defendants in this case were involved in that process, other than through the 602 administrative appeals process, and then, of course, you have Dr. Thomas that we've spoken at length about relative to the medication and the two times that she saw him in 2006. So unless the court has any further questions, I would ask that the district court order be affirmed. Thank you, counsel, and we'll give you two minutes for rebuttal. Counsel makes his arguments quite artfully. One point that I'd like to bring out to the court is the opportunity to amend the complaint. Counsel indicates that Mr. Velazquez could have amended his complaint if he had wanted to at the recommendations level. I'm not sure he understood that's what he was supposed to do. And the reason I say that is that in the excerpts on page 43, he indicates that he would amend the complaint if the court would let him in June of 2008, I believe. But that, of course, is never completed, and so I don't know if he understood that he was supposed to, this was his opportunity to amend that complaint. And I think that that, in this particular case where we have an in pro se person who's a prisoner, I think that the court ought to have told him, look, here, you've got, if you want to amend it here, you've got to amend it now. At the time of the motion that he filed in response to the report and recommendation, did he provide either a proposed amended complaint or did he set forth the additional averments that he would be intending to present? No, I don't believe he does. I think what he does is he writes a letter to the court essentially saying, I object to the motion for dismissal. So it's very inartfully worded, but I think that the way that this court ought to view that is it's his way of saying, look, if I've messed up, give me an opportunity to fix that. I think that that's essentially what's coming out of it, even though it says very specifically I'll amend the complaint by June of 2008. That was all I heard that I wanted to respond to. Thank you, counsel, and thank you for your pro bono representation of this client. It's been a pleasure. It's been extremely helpful to the court. Thank you. The case just heard argued will be submitted for decision. The next case on the oral argument calendar is United States v. Welker.
judges: Seeborg, Trott, Thomas